UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE
COMMISSION,

         Plaintiff,

   -against-

NANOBIT LIMITED, et al.,

      Defendants.

24 Civ. 6517 (SJB) (ST)

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

SECURITIES AND EXCHANGE COMMISSION
Division of Enforcement
Todd D. Brody
Jeremy Brandt (admitted *pro hac vice*)
Attorneys for Plaintiff
100 Pearl Street, Suite 20-100
New York, NY 10006
(212) 336-0060 (Brody)
brodyt@sec.gov

September 19, 2025

## TABLE OF CONTENTS

Preliminary Statement ............................................................................................................1

Relevant Procedural Background ............................................................................................2

Facts Alleged in the Complaint ..............................................................................................2

Standard for Entering a Default Judgment .............................................................................6

Argument .................................................................................................................................7

I.  Defendants are in Default .................................................................................................7

II.  The Complaint's Allegations, Deemed True, Establish NanoBit's Liability for Violating the
Antifraud Provisions of the Federal Securities Laws .....................................................7

A.  NanoBit made Misrepresentations to Prospective Investors ........................................8

B.  Nanobit's Misrepresentations were Material ................................................................8

C.  Nanobit Acted with Scienter .......................................................................................10

III.  The Complaint's Allegations Establish the Liability of Radiant Horizons, Liu Zhao Deli, Zhao
and Sweet Karma for Scheme Liability .........................................................................11

A.  Radiant Horizons, Liu, Zhao, Zhao Deli, and Sweet Karma Engaged in Deceptive Acts that
Operated as a Fraud ....................................................................................................12

B.  Radiant Horizons, Liu, Zhao, Zhao Deli, and Sweet Karma Acted with Scienter .........12

IV.  The Court Should Grant the Relief Sought by the SEC Against Defendants Including
Injunctions, Disgorgement, Prejudgment Interest, and Civil Penalties .........................13

A.  Injunctive Relief ..........................................................................................................13

1.  Injunction from Violating Section 17(a), Section 10(b), and Rule 10b-5 .....................13

2.  Conduct-based Injunctions ..........................................................................................16

B.  The Court Should Order Nanobit, Liu, and Zhao to Pay Disgorgement ........................18

1. The Legal Standards for Disgorgement ................................................................................18

2. The Investors Suffered Pecuniary Harm ...........................................................................19

3. NanoBit Misappropriated Approximately $523,649 ..........................................................19

4. Liu Misappropriated $60,603 and Zhao Misappropriated $4,500...................................20

C. The Court Should Order Nanobit, Liu and Zhao to Pay Prejudgment Interest.............................21

D. The Court Should Order all Defendants to Pay Civil Monetary Penalties.....................................21

Conclusion ...............................................................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

*Aaron v. SEC*, 446 U.S. 680 (1980) ...................................................................................12, 18, 21

*CFTC v. Amada*, 18-cv-7895, 2020 WL 3260079 (S.D.N.Y. April 13, 2020) ...............................8

*Doe v. Alame*, 25-cv-329, 2025 WL 713120 (N.D. Tex. Feb. 24, 2025) ......................................8

*Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155 (2d Cir. 1992) ................6

*Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444 (2d Cir. 2013) .........................................6

*Henry v. Oluwole*, 108 F.4th 45 (2d Cir. 2024)............................................................................6

*In re Citigroup, Inc. Sec. Litig.*, 753 F. Supp.2d 206 (S.D.N.Y. 2010) .....................................10

*Jason v. Abernathy*, 960 F.3d 94 (2d Cir. 2020) ........................................................................10

*LaBarbera v. ASTC Laby's Inc.*, 752 F. Supp. 2d 263 (E.D.N.Y. 2010) .....................................6

*Liu v. SEC*, 591 U.S. 71 (2020)............................................................................................18, 20

*Lorenzo v. SEC*, 587 U.S. 71 (2019) ...........................................................................................11

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 513 F.3d 702 (7th Cir. 2008) ............................10

*Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666 (S.D.N.Y. 2011) .....................................6

*SEC v Smart*, 678 F.3d 850 (10th Cir. 2012) ..............................................................................11

*SEC v. Ahmed*, 72 F.4th 3797 (2d Cir. 2023).............................................................................18

*SEC v. Asset Recovery & Mgmt. Trust, S.A.*, 02-cv-1372, 2008 WL 4831738
   (M.D. Ala. Nov. 3, 2008)........................................................................................................10

*SEC v. Cap. Growth Co., SA. (Costa Rica)*, 391 F. Supp. 593 (S.D.N.Y. 1974) ......................14

*SEC v. Cavanagh*, 155 F.3d 129 (2d Cir. 1998) .........................................................................15

*SEC v. Chappell*, 107 F.4th 114 (3d Cir. 2024).....................................................................14, 16

*SEC v. China Energy Sav. Tech., Inc.*, 06-cv-6402, 2008 WL 6572372 (E.D.N.Y. March 28, 2008) .......15

*SEC v. CKB168 Holdings Ltd.*, 13-cv-5584, 2022 WL 3347253 (E.D.N.Y. Aug. 12, 2022) ..................16

*SEC v. CKB168 Holdings, Ltd.*, 210 F. Supp. 3d 421 (E.D.N.Y. 2016) ....................................12

*SEC v. Collector's Coffee, Inc.*, 19-cv-4355, 2025 WL 752221 (S.D.N.Y. March 10, 2025) .....................20

*SEC v. Collector's Coffee, Inc.*, 697 F. Supp.3d 138 (S.D.N.Y. 2023), *aff'd* 2025 WL
   22538 (2d Cir. Jan. 3, 2025) ...................................................................................................11

*SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90 (2d Cir. 1978)........................................13

*SEC v. Constantin*, 939 F.Supp.2d 288 (S.D.N.Y. 2013).............................................................9

*SEC v. Credit Bancorp, Ltd.*, 195 F. Supp.2d 475 (S.D.N.Y. 2002) .........................................10

*SEC v. Dawson*, 06-cv-6360, 2007 WL 9711173 (E.D.N.Y. Feb. 2, 2007) ................................9

*SEC v. Fife*, 311 F.3d 1 (1st Cir. 2002) ......................................................................................14

*SEC v. First Jersey Securities*, 101 F.3d 1450 (2d Cir. 1996). ...............................10, 13, 18

*SEC v. Forest Res. Mgmt. Corp.*, No. 09 Civ. 0903 (JSR), 2010 WL 2077202 (S.D.N.Y.
   May 18, 2010)..........................................................................................................................22

*SEC v. Frohling*, 851 F.3d 132 (2d Cir. 2016).......................................................................13, 21

*SEC v. Gallard*, 95-cv-767570, 1997 WL 767570 (S.D.N.Y. Dec. 10, 1997) ............................9

*SEC v. Gebben*, 225 F. Supp.2d 921 (C.D. Ill. 2002)..................................................................9

*SEC v. Genovese*, 553 F. Supp.3d 24 (S.D.N.Y. 2021) .............................................................20

*SEC v. George*, 426 F. 3d 786 (6th Cir. 2005)...........................................................................11

iii

*SEC v. Gordon*, 21-cv-1642, 2021 WL 5086556 (N.D. Tex. Nov. 1, 2021)..............................17

*SEC v. Govil*, 86 F.4th 89 (2d Cir. 2023).................................................................................19

*SEC v. Harrison*, 18-cv-1003, 2020 WL 3259099 (M.D. Fla. June 16, 2020) .......................18

*SEC v. iFresh, Inc.*, 22-cv-3200, 2024 WL 416709 (E.D.N.Y. Feb. 5, 2024) ..........................19

*SEC v. Imperiali, Inc.,* 12-cv-80021, 2013 WL 12080193 (S.D. Fla. Sept. 25, 2013) .................9

*SEC v. Jean-Pierre*, 12-cv-8886, 2015 WL 1054905 (S.D.N.Y. Mar. 9, 2015) ..........................11

*SEC v. Laura*, 739 F. Supp.3d 6 (E.D.N.Y. 2024).....................................................................21

*SEC v. LFS Funding Ltd. Part.*, 21-cv-4211, 2023 WL 6373859 (C.D. Cal. Aug. 25, 2023)...................9

*SEC v. Lorin*, 76 F.3d 458 (2d Cir. 1996)..................................................................................19

*SEC v. Lottonet Operating Corp.*, 17-cv-21033, 2017 WL 6949289 (S.D. Fla. March 31, 2017) .............11

*SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082 (2d Cir. 1972) .......................................16

*SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082 (2d Cir. 1972).............................................13

*SEC v. Moleski*, 21-cv-01065, 2021 WL 6752254 (C.D. Cal. Oct. 21, 2021) ..........................18

*SEC v. Nguyen*, 19-cv-01174, 2024 WL 3381583 (C.D. Cal. Feb. 23, 2024) ...........................18

*SEC v. Nielsen*, 18-cv-01217, 2020 WL 9439395 (D.D.C. Feb. 13, 2020)...............................18

*SEC v. Page*, 21-cv-5292, 2024 WL, 4467371 (E.D.N.Y. Oct. 10, 2024) ................................17

*SEC v. Pentagon Capital Mgmt., PLC*, 725 F.3d 279 (2d Cir. 2013).........................................7

*SEC v. Premier Links, Inc.*, 14-cv-7375, 2022 WL 5422661 (E.D.N.Y. July 26, 2022) ...........21

*SEC v. Rabinovich & Assocs, LP*, 07-cv-10547, 2008 WL 4937360 (S.D.N.Y. Nov. 18, 2008)...............9

*SEC v. Razmilovic*, 822 F. Supp. 2d 234 (E.D.N.Y. 2011), *aff'd in relevant part and vacated
in part on other grounds*, 738 F.3d 14 (2d Cir. 2013)..............................................................22

*SEC v. Research Automation Corp.*, 585 F.2d 31 (2d Cir. 1978) ..............................................9

*SEC v. Rinfret*, 19-cv-6037, 2020 WL 6559411 (S.D.N.Y. Nov. 9, 2020) ................................14

*SEC v. Seethrueequity LLC*, 18-cv-10374, 2022 WL 171196 (S.D.N.Y. Jan. 19, 2022) ............17

*SEC v. S-Ray Inc.*, 22-cv-5150, 2023 WL 121435 (W.D. Wash. Jan. 6, 2023)..........................17

*SEC v. Subaye, Inc.*, No. 13-cv-3114, 2014 WL 4652578 (S.D.N.Y. Sept. 18, 2014)...............16

*SEC v. U.S. Environmental*, 155 F.3d 107 (2d Cir. 1998) ........................................................10

*SEC v. USA Real Estate Fund 1, Inc.*, 30 F. Supp.3d 1026 (E.D. Wash. 2014) ..........................9

*SEC v. Wayland*, 17-cv-01156, 2019 WL 2620669 (C.D. Cal. April 8, 2019).........................11

*SEC v. Wellness Matrix Group, Inc.*, 21-cv-1031, 2023 WL 5235177 (C.D. Cal. Aug. 10, 2023)............17

*Starbucks v. McKinney*, 144 S. Ct. 1570 (2024) ......................................................................14

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190 (2d Cir. 2008) ...........10

*TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438 (1976) ...........................................................8

*United States v. Booth*, 309 F.3d 566 (9th Circ. 2002)...........................................................11

*United States v. Rivera*, 13-CR-149, 2015 WL 7455504 (E.D.N.Y. Nov, 23, 2015),
aff'd, 2022 WL 2979588 (2d Cir. July 28, 2022) ......................................................................8

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008)        14

Pursuant to Federal Rule of Civil Procedure 55(b)(2), Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this Memorandum of Law, along with the Declarations of Neil B. Hendelman, dated September 19, 2025 ("Hendelman Decl.") and of Nicholas Bohmann, dated September 19, 2025 ("Bohmann Decl."), and the exhibits thereto, in support of its Motion for Judgment by Default against Defendants NanoBit Limited ("NanoBit"), Radiant Horizons Limited ("Radiant Horizons"), Sweet Karma Fashion Inc. ("Sweet Karma"), Zhao Tropical Deli Inc. ("Zhao Deli"), Jiajie Liu ("Liu"), and Hua Zhao ("Zhao") (collectively "Defendants").

## PRELIMINARY STATEMENT

This case involves a relationship investment scam perpetrated by a complex web of known and unknown individuals and entities located in the U.S. and abroad ("Scheme Participants"). Its purpose was to defraud U.S.-based investors by contacting targets seemingly at random, gaining their trust over the course of months, and then manipulating them into transferring their assets and funds before disappearing with the stolen investments.

None of the Defendants responded to the SEC's Complaint and they are in default. Based on the Complaint's allegations, which are deemed true because of Defendants' default, and the other evidence submitted with this motion as to the amount of Nanobit's, Liu's, and Zhao's ill-gotten gains, the Court should enter a default judgment finding each defendant liable.

With respect to remedies, the SEC seeks two injunctions against each defendant. First, the SEC seeks an order enjoining Defendants from future violations of the antifraud provisions of Section 17(a) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]. Second, the SEC seeks an order enjoining Defendants from participating in the purchase, offer, or sale of a security or inducing or attempting to induce the purchase or sale of a security by others (with carveouts for personal trading by Liu and Zhao). In

addition, the SEC seeks disgorgement of unlawful gains pursuant to Exchange Act Sections 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(5) and 78u(d)(7)], plus prejudgment interest ("PJI") thereon, and a civil monetary penalty pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)] against Defendants in the following amounts:

| Defendant | Disgorgement | Prejudgment Interest | Penalty |
|---|---|---|---|
| NanoBit | $523,649 | $81,957 | $1,182,251 |
| Radiant Horizons | N/A | N/A | $1,182,251 |
| Zhao Tropical Deli | N/A | N/A | $1,182,251 |
| Sweet Karma Fashion | N/A | N/A | $1,182,251 |
| Liu | $60,603 | $9,485 | $50,000 |
| Zhao | $4,500 | $704 | $50,000 |

For the reasons set forth herein, the SEC respectfully requests that the Court grant its motion for judgment by default and issue an order granting the requested relief.

## RELEVANT PROCEDURAL BACKGROUND

The SEC filed its Complaint on September 17, 2024. DE 1. The SEC was able to serve each defendant by traditional means except for Liu and Radiant Horizons. On March 11, 2025, the SEC moved for alternative service and for additional time to serve the Complaint on Liu and Radiant Horizons. DE 28. On the same date, the Court granted that motion and ordered the SEC to serve Liu and Radiant Horizons by publication, email, and service on the California Secretary of State. DE 30. None of the Defendants, after properly being served, appeared in this action or responded to the Complaint in any manner. On July 3, 2025, the SEC requested the clerk's entry of default, which was entered on July 14, 2025. DE 36, 38.

## STATEMENT OF FACTS ALLEGED IN THE COMPLAINT

From at least September 2023, NanoBit, in concert with the Scheme Participants, engaged in a coordinated scheme to gain investors' trust and confidence in order to defraud them. DE 1, ¶¶ 1-

2. NanoBit's soon-to-be investors were solicited seemingly at random to join WhatsApp groups run by Scheme Participants impersonating real financial professionals. *Id.* ¶¶ 1, 22-23. After cultivating false rapport over the course of months, Scheme Participants began promoting crypto asset trading. *Id.* ¶¶ 24, 27. Specifically, Scheme Participants sent investors recommendations via WhatsApp to begin trading on NanoBit's crypto asset trading platform ("the NanoBit Platform"), and they introduced additional Scheme Participants who purported to be NanoBit customer support representatives. *Id.* ¶¶ 27-28. Investors were provided a link to the NanoBit Platform and were encouraged to participate in NanoBit's purported rewards program. *Id.*

Everything about the NanoBit Platform was false and designed to defraud investors. *Id.* ¶ 31. From the investor's perspective, the NanoBit Platform's interface presented account balances, pricing information, and appeared to enable users to trade crypto assets. *Id.* ¶ 30. In reality, the investors' account balances were fake, and there is no evidence that a crypto asset trading platform where transactions were executed actually existed. *Id.* ¶¶ 31, 34, 38.

NanoBit made additional false statements to its investors to persuade them to invest. Both through Scheme Participants on WhatsApp purporting to be NanoBit customer support representatives and on the NanoBit Platform's "About Us" page, NanoBit claimed that its purported affiliate, NanobitUS Securities, was registered as a broker with the Commission, was a member firm of the Securities Investor Protection Corporation, and was affiliated with NASDAQ, the CBOE, and Apex Clearing Corp. *Id.* ¶ 33. All of those claims were false. *Id.*

Additionally, in January 2024, NanoBit promoted at least two fake crypto assets in purported initial coin offerings ("ICOs"), which were offered and sold as investment contracts: EGYG and VTRD. *Id.* ¶ 38. The NanoBit Platform provided investors with fake whitepapers for EGYG and VTRD, explaining that proceeds raised through the offering would be used to develop additional crypto asset trading platforms. *Id.* ¶¶ 39, 71-74. Neither EGYG and VTRD, nor the projects they

3

purported to finance, existed. *Id.* Nevertheless, Scheme Participants impersonating investment professionals on WhatsApp convinced investors to participate in the ICOs by touting astronomical returns. *Id.* ¶¶ 40, 44. For example, on January 16, 2024, a pseudonymous financial professional in a WhatsApp group promoted VTRD by telling a NanoBit investor that "your investment may achieve a 10x or 20x growth in the near future, with low risk and high returns." *Id.* ¶ 44.

The purpose of these misrepresentations was to misappropriate NanoBit investors' funds, (both crypto assets and fiat currency). As to crypto, NanoBit convinced investors to send crypto assets to a number of crypto asset addresses by telling them—through Scheme Participants on WhatsApp—that those crypto addresses were their own unique, dedicated addresses for trading crypto assets on the NanoBit Platform. *Id.* ¶ 36. But those crypto asset addresses were not actually controlled by the investors; they were used by NanoBit to pool and misappropriate investors' crypto assets. *Id.* ¶ 37. Specifically, NanoBit used crypto asset addresses (identified in the SEC's Complaint as the NanoBit Receiver Address and 19 addresses created by NanoBit Deployer Address) to pool investors' assets, including those from known NanoBit investors. *Id.* ¶¶ 60-64. The NanoBit Receiver Address and the NanoBit Deployer Address subsequently transferred significant amounts of crypto assets to a third address, the NanoBit Transmitter Address, which was previously flagged for involvement in another crypto asset scam. *Id.* ¶¶ 65-67.

As to fiat currency, NanoBit misappropriated investors' funds by coordinating with Radiant Horizons, Liu, Zhao Deli, Zhao, and Sweet Karma. Liu and Zhao are the controllers and beneficial owners of Radiant Horizons and Zhao Deli, respectively, and the signatories on their respective bank accounts. DE 1, ¶¶ 19, 21. Scheme Participants on WhatsApp purporting to be NanoBit customer support representatives told NanoBit investors that Radiant Horizons, Zhao Deli, and Sweet Karma were "acceptors" that would convert fiat currency wired to them into crypto assets and place them in the investors' accounts on the (fictitious) NanoBit Platform. *Id.* ¶ 34. Over the

course of several months, investors wired money to the bank accounts of Radiant Horizons, Zhao Deli, and Sweet Karma based on that false representation. *Id.* ¶¶ 34, 57. In reality, these entities existed only to facilitate the creation of corporate bank accounts used to pool and misappropriate funds received from investors as part of the scheme. *Id.* ¶ 53.

Radiant Horizons, Zhao Deli, and Sweet Karma each received NanoBit investors' funds after those investors were instructed to wire funds to them by Scheme Participants on WhatsApp.[1] *Id.* ¶¶ 41, 46, and 55. Radiant Horizons, Liu, Zhao Deli, and Zhao misappropriated investors' funds in at least two ways. *Id.* ¶ 53. First, Radiant Horizons and Zhao Deli sent investor funds to other Scheme Participants, including entities located abroad. *Id.* ¶ 54. Specifically, Radiant Horizons sent over $2 million in foreign wires to bank accounts in Hong Kong. *Id.* These wires ranged in amount from $69,400 to $268,598 and were sent almost immediately upon receipt of likely investor funds.[2] *Id.* Second, Liu and Zhao spent investors' funds sent to Radiant Horizons and Zhao Deli, respectively, on personal expenses. *Id.* ¶ 57. As described in the Declaration of Neil B. Hendelman, Liu and Zhao spent investors' funds by withdrawing cash from ATMs and—as reflected in debit card spending—on travel, entertainment, and retail shopping. Hendelman Decl. ¶¶ 11-12, 14.

Radiant Horizons, Liu, Zhao Deli, Zhao, and Sweet Karma knew or recklessly disregarded that the funds flowing into the bank accounts were sent to fund investments. DE 1, ¶ 58. For example, wire transfers with memo lines including "INVESTMENTS" and "NANOBITSUS" were sent to Radiant Horizons in January 2024. *Id.* Furthermore, the nature of investors' wires to the accounts of these Defendants does not match their purported businesses. For example, in four days

---

[1] While Sweet Karma received investors' funds after those investors were falsely told that it was an "acceptor" for the NanoBit Platform, the SEC learned after filing its Complaint that those funds were not sent to additional Scheme Participants. Instead, the investors' wires were reversed, apparently at the requests of the victims' banks.

[2] Because the recipients of these transfers are separate legal entities that are not defendants in the instant action, Plaintiff does not seek those amounts in disgorgement here.

between January 2, 2024, and January 5, 2024, Zhao Deli (ostensibly a grocery store) received $188,633.70 in nondescript incoming wire transfers from individuals. *Id.* ¶ 59. While some investors received small amounts of crypto assets after requesting withdrawals, none were able to withdraw their full account balances from the NanoBit Platform. *Id.* ¶¶ 52, 69.

## STANDARD FOR ENTERING A DEFAULT JUDGMENT

Federal Rule of Civil Procedure 55 establishes a two-step procedure by which a party may obtain a default judgment. First, pursuant to Rule 55(a), if a party has failed to plead or otherwise defend, the Clerk of the Court must enter a certificate of default by making a notation on the record. Fed. R. Civ. P. 55(a). Second, after this entry of default, if the party still fails to appear or move to set aside the default, then the court may enter a default judgment. Fed. R. Civ. P. 55(b); *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 454 (2d Cir. 2013).

In deciding a motion for default judgment, a court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in [his or her] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). A party's default is deemed an admission of all well-pleaded allegations of liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). "Only after the district court is convinced that the facts meet the elements of the relevant cause of action—whether those facts are established by well-pleaded allegations or proven by admissible evidence—may the district court enter a default judgment." *Henry v. Oluwole*, 108 F.4th 45, 55 (2d Cir. 2024). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *LaBarbera v. ASTC Laby's Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (adopting report and recommendation) (citation and quotations omitted). "[T]he court must accept all well-pleaded allegations in the complaint as true, except those pertaining to the amount of damages." *Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666, 675 (S.D.N.Y. 2011).

6

# ARGUMENT

Because Defendants have not responded to the Complaint, the Court should enter a default judgment against them, deem the Complaint's allegations to be true, and find that the Complaint's well-pleaded allegations state claims against NanoBit for securities fraud under Securities Act Section 17(a) and Exchange Act Section 10(b), and Rule 10b-5 thereunder and state claims for securities fraud against Radiant Horizons, Liu, Zhao Deli, Zhao, and Sweet Karma under Securities Act Sections 17(a)(1) and 17(a)(3) [15 U.S.C. §§ 77q(a)(1), (a)(3)] and Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5(a) and Rule 10b-5(c) thereunder [17 C.F.R. §§ 240.10b-5(a), 5(c)].

## I.    DEFENDANTS ARE IN DEFAULT

The SEC properly served Defendants under the Federal Rules of Civil Procedure or under the Court's March 11, 2025 Order granting the SEC's motion for alternative service as to Radiant Horizons and Liu. As the Certificate of Default (DE 38) and the docket show, Defendants have failed to respond to the Complaint.  Thus, they are in default.

## II.    THE COMPLAINT'S ALLEGATIONS, DEEMED TRUE, ESTABLISH NANOBIT'S LIABILITY FOR VIOLATING THE ANTIFRAUD PROVISIONS OF THE FEDERAL SECURITIES LAWS

In this case, the SEC claims that NanoBit violated Securities Act Section 17(a) and Exchange Act Section 10(b) and Rule 10b-5 thereunder. To establish a violation of Exchange Act Section 10(b) and Rule 10b-5, the SEC must show that the violator:

(i)    made a material misrepresentation or a material omission or used a fraudulent device;

(ii)    with scienter; and

(iii)    in connection with the purchase or sale of securities.

*See SEC v. Pentagon Capital Mgmt., PLC*, 725 F.3d 279, 285 (2d Cir. 2013). "The requirements for a violation of Section 17(a) [of the Securities Act] apply only [to an offer or] sale of securities but in other respects are the same as Section 10(b) and Rule 10b-5, except that 'no showing of scienter is

7

required . . . under [Section 17] (a)(2) or (a)(3).'" *Id.* The Complaint's factual allegations satisfy each

of these elements, as discussed below.[3]

### A.    NanoBit Made Misrepresentations to Prospective Investors

As alleged in the Complaint, NanoBit falsely represented to prospective investors that: (1)

the individuals communicating with the prospective investors on WhatsApp were actual financial

industry professionals; (2) NanoBit's purported affiliate, NanobitUS Securities, was an SEC-

registered broker affiliated with reputable financial industry organizations; (3) crypto asset

transactions were executed on the NanoBit Platform; (4) the NanoBit Receiver Address and the 19

addresses created by the NanoBit Deployer Addresses belonged to the investors; (5) Radiant

Horizons, Zhao Deli, and Sweet Karma were "acceptors" of fiat currency who would credit funds to

investors' accounts on the NanoBit Platform; and (6) EGYG and VTRD existed.

### B.    NanoBit's Misrepresentations were Material

A fact is material if there is a "a substantial likelihood that the disclosure of the omitted fact

would have been viewed by the reasonable investor as having significantly altered the 'total mix' of

information available." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).

Each of the misrepresentations listed above were material as a matter of law.

Misrepresentations to obfuscate the identities of involved individuals are material. *See SEC v. LFS*

---

[3] The SEC's Complaint alleges that NanoBit offered and sold securities to the investors, including
crypto assets EGYG and VTRD, which were offered and sold as investment contracts. DE 1, ¶¶ 71-
74. Thus, the SEC does not address this requirement in detail in this brief. In addition, the SEC
must also show that NanoBit used any means or instrumentality of interstate commerce in
connection with their misconduct. *See* 15 U.S.C. §§ 78j(b) & 77q(a). The Complaint's allegations
satisfy this element as NanoBit used WhatsApp text messages to accomplish its securities fraud. *Id.* ¶
13. *Doe v. Alame*, 25-cv-329, 2025 WL 713120, at * 2 (N.D. Tex. Feb. 24, 2025) (use of WhatsApp,
an internet app, is interstate commerce); *See CFTC v. Amada*, 18-cv-7895, 2020 WL 3260079, at * 7
(S.D.N.Y. April 13, 2020) (text messages are instrumentality of interstate commerce); *United States v.
Rivera*, 13-CR-149, 2015 WL 7455504, at * 19 (E.D.N.Y. Nov, 23, 2015), aff'd, 2022 WL 2979588
(2d Cir. July 28, 2022) (text messages satisfy interstate commerce requirement).

*Funding Ltd. Part.*, 21-cv-4211, 2023 WL 6373859, at *7 (C.D. Cal. Aug. 25, 2023) (defendant's deceptive use of the name of a real registered person to solicit investors was a material misrepresentation); *see also SEC v. Imperiali, Inc.,* 12-cv-80021, 2013 WL 12080193, at *4 (S.D. Fla. Sept. 25, 2013) (false statements regarding the identify of board members, which were part of the scheme to lure investors to the company, were material). Misrepresentations regarding a company's or an individual's credentials are also material. *See SEC v. Rabinovich & Assocs, LP,* 07-cv-10547, 2008 WL 4937360, at *3 (S.D.N.Y. Nov. 18, 2008) (false statements that the firm was a member of NYSE, NASD, and SIPC "would be material to reasonable investors"); *see also SEC v. USA Real Estate Fund 1, Inc.,* 30 F. Supp.3d 1026, (E.D. Wash. 2014) ("false assertions about the purported involvement of prominent investment firms, Merrill Lynch and BlackRock, in order to give the illusion of legitimacy to the USA Fund," were material); *see also SEC v. Gebben,* 225 F. Supp.2d 921, 926-27 (C.D. Ill. 2002) (misrepresentations that defendant was an analyst were material). Misrepresentations concerning the use of investor funds are also material. *See SEC v. Research Automation Corp.,* 585 F.2d 31, 35-36 (2d Cir. 1978) ("What reasonable investor would not wish to know that the money raised by stock sales would . . . be diverted to [the defendant company's] officers? It is beyond cavil that [defendants'] misleading statements and omissions concerned facts that were material as a matter of law."); *see also SEC v. Constantin,* 939 F.Supp.2d 288, 306-07 (S.D.N.Y. 2013) (finding "no doubt" that "patently misleading conduct," including diverting invested funds for personal and business expenses and providing investors with misleading documents to cover up a fraudulent scheme, was material); *SEC v. Dawson,* 06-cv-6360, 2007 WL 9711173, at *4 (E.D.N.Y. Feb. 2, 2007) ("Misrepresentations that are made to investors regarding the use of their funds are material"). And misrepresentations concerning a security or asset that does not actually exist are also material. *SEC v. Gallard,* 95-cv-767570, 1997 WL 767570, at *3 (S.D.N.Y. Dec. 10, 1997) ("[T]here is no question a reasonable investor would consider important the fact that

9

the 'security' at issue did not exist"); *SEC v. Asset Recovery & Mgmt. Trust, S.A.*, 02-cv-1372, 2008 WL 4831738, at *7 (M.D. Ala. Nov. 3, 2008) ("a reasonable investor would want to know that the investments in question did not exist"); *see also SEC v. Credit Bancorp, Ltd.*, 195 F. Supp.2d 475, 492 (S.D.N.Y. 2002) (representation that an established trust existed was material).

### C.    NanoBit Acted with Scienter

"Scienter, as used in connection with the securities fraud statutes, means intent to deceive, manipulate, or defraud." *SEC v. First Jersey Securities*, 101 F.3d 1450, 1467 (2d Cir. 1996). Scienter may be established by a showing of recklessness. *See SEC v. U.S. Environmental*, 155 F.3d 107, 111 (2d Cir. 1998).

The SEC's Complaint alleges that NanoBit knew that (1) the crypto asset addresses provided to investors were used to pool and misappropriate investors' crypto asset, (2) EGYG and VTRD were fake, and (3) the promotional whitepapers for EGYG and VTRD described fictitious securities and development projects. DE 1, ¶¶ 36, 38-39. NanoBit's scienter is further underscored by its demonstrably false claims that its purported affiliate, NanobitUS Securities, was registered as a broker with the SEC and affiliated with reputable financial industry organizations. *Id.* ¶ 33. These statements were false, and NanoBit knew that they were false, but it made them anyway to convince investors that the NanoBit Platform was safe and legitimate.[4] The use of fabricated materials, such as the promotional whitepapers and the fake trading platform shows that Nanobit acted with

---

[4] Because Defendants' fraudulent scheme included concealment of the individuals involved, the SEC is unable to identify the persons who controlled NanoBit.  Nonetheless, the SEC can demonstrate NanoBit's scienter, as the egregious and dramatic misrepresentations concerning the company's very fraudulent purpose "would have been approved by corporate officials sufficiently knowledgeable about the company to know the announcement was false."  *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 513 F.3d 702, 710 (7th Cir. 2008) (Posner, J.); *Jason v. Abernathy*, 960 F.3d 94, 99 (2d Cir. 2020) ("a statement may be so 'dramatic' that collective corporate scienter may be inferred"); *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190 (2d Cir. 2008) (citing Tellabs); *In re Citigroup, Inc. Sec. Litig.*, 753 F. Supp.2d 206, 238 (S.D.N.Y. 2010).

scienter. *See SEC v. Collector's Coffee, Inc.*, 697 F. Supp.3d 138 169 (S.D.N.Y. 2023), *aff'd* 2025 WL 22538 (2d Cir. Jan. 3, 2025). NanoBit's subsequent misappropriation of investors' crypto assets to the NanoBit Transmitter Address further demonstrates its scienter. *See SEC v Smart*, 678 F.3d 850, 857 (10ᵗʰ Cir. 2012) (using investor money to pay for personal expenses "indicate[s] a deliberate intent to defraud investors").*United States v. Booth*, 309 F.3d 566, 575 (9ᵗʰ Circ. 2002) (misuse of client funds is probative of intent to defraud); *SEC v. George*, 426 F. 3d 786, 795 (6th Cir. 2005) (defendant's expenditures of investor funds on personal expenses is a "fact that itself that establishes the requisite state of mind for committing securities fraud"); *SEC v. Wayland*, 17-cv-01156, 2019 WL 2620669, at *7 (C.D. Cal. April 8, 2019) ("[Defendant]'s misappropriation of investor money for personal use is sufficient proof of scienter."); *SEC v. Lottonet Operating Corp.*, 17-cv-21033, 2017 WL 6949289, at *19 (S.D. Fla. March 31, 2017) ("It is hard to imagine someone displaying a higher degree of scienter than someone who knowingly profits at the expense of others").

## III.  THE COMPLAINT'S ALLEGATIONS ESTABLISH THE LIABILITY OF RADIANT HORIZONS, LIU, ZHAO DELI, ZHAO, AND SWEET KARMA FOR SCHEME LIABILITY

The SEC further claims that Radiant Horizons, Liu, Zhao Deli, Zhao, and Sweet Karma violated Securities Act Sections 17(a)(1) and 17(a)(3) and Exchange Act Section 10(b) and Rule 10b-5(a) and Rule 10b-5(c) thereunder, which courts sometimes refer to as the "scheme liability" provisions. *See, e.g., SEC v. Jean-Pierre*, 12-cv-8886, 2015 WL 1054905, at *8 (S.D.N.Y. Mar. 9, 2015). Those provisions make it unlawful:

>  (1) To employ any device, scheme, or artifice to defraud, or . . .

>  (3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit . . .

15 U.S.C. § 77q; *accord* 17 C.F.R. § 240.10b-5; *Lorenzo v. SEC*, 587 U.S. 71, 74 (2019). For scheme liability, the defendants "must have participated in an illegitimate, sham or inherently deceptive

transaction where their conduct or role had the purpose and effect of creating a false appearance." *SEC v. CKB168 Holdings, Ltd.*, 210 F. Supp. 3d 421, 445 (E.D.N.Y. 2016) (cleaned up). While scienter is required for Section 17(a)(1) of the Securities Act and Section 10(b) of the Exchange Act and Rules 10b-5(a) and 10b-5(c) thereunder, scienter is not required for Section 17(a)(3) of the Securities Act. *Aaron v. SEC*, 446 U.S. 680, 702 (1980).

A.    **Radiant Horizons, Liu, Zhao Deli, Zhao, and Sweet Karma Engaged in Deceptive Acts that Operated as a Fraud**

Here, the SEC's Complaint alleges that Radiant Horizons, Zhao Deli, and Sweet Karma opened and maintained bank accounts for the purpose of receiving funds from the investors. DE 1, ¶ 34. By opening the corporate bank accounts in service of the NanoBit scheme, these Defendants employed a device, scheme, or artifice to defraud, and they engaged in an act, practice, or course of business which operated as a fraud on NanoBit's victims. Radiant Horizons and Zhao Deli further consummated the fraud by wiring the investors' funds from the bank accounts to other Scheme Participants, including foreign entities. *Id.* ¶¶ 53-54.

Liu and Zhao, as Radiant Horizons and Zhao Deli's respective beneficial owners and controllers, participated in those entities' deceptive acts. *Id.* ¶ 53. Liu and Zhao also engaged in an additional deceptive practice: misappropriating NanoBit investors' funds for personal use, namely cash withdrawals at ATMs, travel, entertainment, and retail. *Id.* ¶ 57. Spending investors' funds in this manner was deceptive because investors were told by Scheme Participants on WhatsApp that the money they sent to Radiant Horizons and Zhao Deli would be credited to their accounts on the NanoBit Platform. *Id.* ¶ 34.

B.    **Radiant Horizons, Liu, Zhao, Zhao Deli, and Sweet Karma Acted with Scienter**

The Complaint alleges that Radiant Horizons, Liu, Zhao Deli, Zhao, and Sweet Karma knew or recklessly disregarded that the funds in question belonged to investors. *Id.* ¶ 58. Radiant Horizons

received wire transfers with memo lines including "INVESTMENTS" and "NANOBITSUS," and Zhao Deli (ostensibly a grocery store) received $188,633.70 in nondescript incoming wire transfers from individuals over four days in January 2024. *Id.* ¶¶ 58-59. The fact that Liu and Zhao misappropriated investors' funds for personal use, *id.* ¶ 57, further demonstrates their scienter (*see supra* regarding Nanobit's scienter).

## IV. THE COURT SHOULD GRANT THE RELIEF SOUGHT BY THE SEC AGAINST DEFENDANTS INCLUDING INJUNCTIONS, DISGORGEMENT, PREJUDGMENT INTEREST, AND CIVIL PENALTIES

### A. Injunctive Relief

"Once the district court has found federal securities law violations, it has broad equitable power to fashion appropriate remedies." *SEC v. Frohling*, 851 F.3d 132, 138-139 (2d Cir. 2016) (quoting *First Jersey*, 101 F.3d at 1474); *see also SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1103 (2d Cir. 1972) (the Securities Act and Exchange Act "confer general equity powers upon the district courts"); *see also* 15 U.S.C. §§ 78u(d)(1), (d)(5). Here, the SEC requests that, under that authority, the Court impose injunctions: (1) permanently restraining and enjoining Defendants from violating Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder; and (2) permanently restraining and enjoining Defendants from participating in the purchase, offer, or sale of a security or inducing or attempting to induce the purchase or sale of a security (with carveouts for Liu and Zhao for personal trading).

### 1. Injunction from Violating Section 17(a), Section 10(b), and Rule 10b-5

Securities Act Section 20(b) [15 U.S.C. § 77t(b)] and Exchange Act Section 21(d) [15 U.S.C. § 78u(d)] authorize federal courts to issue injunctive relief upon a showing that (1) violations of the securities laws have occurred; and (2) a reasonable likelihood exists that violations will occur again. *See SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 99-100 (2d Cir. 1978). To obtain a permanent injunction against Defendants' future violations of the securities laws, the SEC must demonstrate:

that (1) the SEC has actually succeeded on the merits, (2) irreparable harm will likely result in the absence of the injunction, (3) the balance of the equities tips in the SEC's favor, and (4) the injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008); *see also Starbucks v. McKinney*, 144 S. Ct. 1570, 1576 (2024) ("[w]hen Congress empowers courts to grant equitable relief, there is a strong presumption that courts will exercise that authority in a manner consistent with traditional principles of equity," which, with regard to injunctive relief, includes using "the traditional four-part test" set forth in *Winter*). The proposed judgment would prohibit future violations of Securities Act Section 17(a) and Exchange Act Section 10(b) and Rule 10b-5 thereunder.

In the context of a default judgment, the Complaint's factual allegations may be accepted as true when considering the appropriateness of a permanent injunction. *See SEC v. Rinfret*, 19-cv-6037, 2020 WL 6559411, at *4 (S.D.N.Y. Nov. 9, 2020) (granting injunction in default judgment motion based on complaint's factual allegation).

Each of the four elements set forth in *Winter* is met here. The first *Winter* element is met because, as shown in Sections II and III above, Defendants have violated the antifraud provisions of the securities laws and, as such, the SEC has succeeded on the merits of its claims.

The second *Winter* element, irreparable harm, is met by showing that Defendants will likely commit future violations. *See SEC v. Chappell*, 107 F.4th 114, 138 (3d Cir. 2024) (citing *SEC v. Fife*, 311 F.3d 1, 8 (1st Cir. 2002)); *see also SEC v. Cap. Growth Co., S.A. (Costa Rica)*, 391 F. Supp. 593, 598 (S.D.N.Y. 1974) (reasonable likelihood of future activity, and thus imminent harm, could be inferred from past activities even if they had ceased). In determining whether there is a reasonable likelihood of future violations, district courts consider these factors:

> that the defendant has been found liable for illegal conduct; the degree of scienter involved; whether the infraction is an 'isolated occurrence;' whether defendant continues to maintain that his past conduct was blameless; and

14

whether, because of his professional occupation, the defendant might be in a position where future violations could be anticipated.

*SEC v. Cavanagh*, 155 F.3d 129, 135 (2d Cir. 1998).

Each of these factors shows that Defendants are likely to violate the antifraud provisions of the securities laws in the future, especially if they are permitted to participate in the purchase, offer, or sale of securities, or induce others to purchase or sell securities. The NanoBit scheme was an egregious fraud designed to trick and manipulate investors into sending large amounts of investment funds; thus, it was carried out with a high degree of scienter. As described in Section II above, NanoBit made myriad false representations to convince investors of the safety of their funds and crypto assets and the existence of the securities offered on the NanoBit Platform. As described in Sections III above, Radiant Horizons, Liu, Zhao Deli, Zhao, and Sweet Karma engaged in a deceptive course of business by pooling and misappropriating investors' funds sent to purchase those securities, in furtherance of the NanoBit scheme. The Defendants' conduct was not isolated; it took place over the course of months while Scheme Participants on WhatsApp built investors' trust. Four of the Defendants—NanoBit, Radiant Horizons, Zhao Deli, and Sweet Karma—are corporate entities without legitimate business operations and appear to have been created solely to perpetrate investment scams. Moreover, not only have the Defendants not made assurances against future violations, they have also failed to appear or respond to the SEC's allegations. As stated in *SEC v. China Energy Sav. Tech., Inc.*, 06-cv-6402, 2008 WL 6572372, at *8 (E.D.N.Y. March 28, 2008), "where, as here, a party has failed to appear, that party fails to recognize his wrongdoing and provide assurances against further violations. In such circumstances, an injunction is appropriate." *See also SEC v. Netelkos*, 84-cv-0335, 1985 WL 214, at *1 (S.D.N.Y. Jan. 24, 1985) (noting that the likelihood of future violations was "very great" where defendant failed to appear in civil action).

The remaining two *Winter* factors (balancing the equities and consideration of the public interest) are met here. The balance of the equities favors the SEC here because "investors need[ ] the protection of an injunction" despite Defendants' private interests, especially in light of the likelihood of future fraud violations. *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1102 (2d Cir. 1972). The SEC's proposed order would make appropriate concessions for the private interests of Liu and Zhao by permitting personal trading in securities. The public interest favors the proposed injunctions because, "[a]s a practical matter, where the SEC demonstrates both actual success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *Chappell*, 107 F.4th at 139. The public interest in enforcing the antifraud provisions of the federal securities laws favors enjoining Defendants to protect investors from future investment scams of this kind. *See SEC v. Subaye, Inc.*, No. 13-cv-3114, 2014 WL 4652578, at \*4 (S.D.N.Y. Sept. 18, 2014) ("In light of [defendant's] status as a repeat offender and the previously discussed likelihood of the recurrence of similar misconduct, the entry of permanent injunctions enjoining [defendant] from future violations of the securities laws . . . is appropriate and would not disserve the public interest.").

### 2.    Conduct-based Injunction

To protect investors from any further misconduct by Defendants, the SEC also seeks a conduct-based injunction that would permanently restrain and enjoin Defendants from participating in the purchase, offer, or sale of a security or inducing or attempting to induce the purchase or sale of a security (with carveouts for personal trading by Liu and Zhao). Such an injunction is authorized under Section 21(d)(5) of the Exchange Act, which gives a Court discretion to impose "any equitable relief that may be appropriate or necessary for the benefit of investors." 15 U.S.C. § 78u(d)(5); *see also SEC v. CKB168 Holdings Ltd.*, 13-cv-5584, 2022 WL 3347253, at \* 4 (E.D.N.Y. Aug. 12, 2022) ("[t]he Court has wide discretion to impose a conduct-based injunction in SEC actions").

16

For the reasons set forth above with respect to the injunction against future violations of the securities laws (*supra* Section IV(A)(i)), a conduct-based injunction preventing Defendants from participating in the securities markets is both appropriate and necessary for the benefit of investors. In the instant case, Defendants participated in an egregious fraud designed to trick and manipulate investors into sending large amounts of investment funds. This scheme included misappropriating the identities of real industry professionals to trick the investors and by telling the investors that they were affiliated with SEC- and SIPC-registered entities. Defendants had a high degree of scienter. The scheme was conducted over an extended period. And if Defendants are not so enjoined, the likelihood that they will continue to attempt to defraud investors is great.

District courts around the country have imposed similar injunctions limiting defendants from participating in the issuance, purchase, offer, or sale of any security, as the SEC seeks here. *See*, *e.g.*, *SEC v. Page*, 21-cv-5292, 2024 WL, 4467371, at *1 (E.D.N.Y. Oct. 10, 2024) (enjoining defendant "from participating in in the issuance, purchase, offer, or sale of any security, except for purchasing or selling securities listed on a national securities exchange for his own personal account"); *SEC v. Seethruequity LLC,* 18-cv-10374, 2022 WL 171196, at *7 (S.D.N.Y. Jan. 19, 2022) ("the Court finds it appropriate, based on the facts stated above, to permanently enjoin defendants from promoting, causing the promotion, or deriving compensation from the promotion of any issuer of any security"); *SEC v. Wellness Matrix Group, Inc.*, 21-cv-1031, 2023 WL 5235177, at *7 (C.D. Cal. Aug. 10, 2023) (injunctions prohibiting defendant "from directly or indirectly participating in the issuance, purchase, offer, or sale of any security"); *SEC v. Gordon*, 21-cv-1642, 2021 WL 5086556, at *9 (N.D. Tx. Nov. 1, 2021) (injunction against "participating in the issuance, purchase, offer, or sale of any securities"); *SEC v. S-Ray Inc.,* 22-cv-5150, 2023 WL 121435, at *4 (W.D. Wash. Jan. 6, 2023) (injunction prohibiting the defendant "from directly or indirectly, including, but not limited to, through any entity owned or controlled by [the defendant], participating in the issuance,

17

purchase, offer, or sale of any security"). Courts have further exercised their broad equitable powers to enjoin defendants from securities-related conduct to protect investors. *See, e.g.*, *SEC v. Nguyen*, 19-cv-01174, 2024 WL 3381583, at *4 (C.D. Cal. Feb. 23, 2024) (enjoining defendant from "accessing any securities brokerage account of any third party, including doing so with the consent of the account holder"); *SEC v. Moleski*, 21-cv-01065, 2021 WL 6752254, at *5 (C.D. Cal. Oct. 21, 2021) (enjoining defendant from "future solicitations to buy or sell securities"); *SEC v. Nielsen*, 18-cv-01217, 2020 WL 9439395, at *25 (D.D.C. Feb. 13, 2020) (recommending injunction prohibiting defendant from "directly or indirectly accepting compensation for consulting or advising any penny stock issuer"), *recommendation adopted at* 2020 WL 9439363 (D.D.C. July 30, 2020); *SEC v. Harrison*, 18-cv-1003, 2020 WL 3259099, at *3 (M.D. Fla. June 16, 2020) (enjoining defendant from "providing, or receiving compensation for the provision of, professional legal services to any person or entity in connection with the offer or sale of securities"). As such, to protect investors from any further misconduct, the Court should impose the conduct-based injunctions.

**B.    The Court Should Order Nanobit, Liu and Zhao to Pay Disgorgement**

**1.    The Legal Standards Governing Disgorgement**

Exchange Act Sections 21(d)(5) and 21(d)(7) authorize courts to order disgorgement in SEC enforcement actions. 15 U.S.C. §§ 78u(d)(5) & 78u(d)(7). "The primary purpose of disgorgement as a remedy for violation of the securities laws is to deprive violators of their ill-gotten gains." *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1474 (2d Cir. 1996). "[A] disgorgement award that does not exceed a wrongdoer's net profits and is awarded for victims is equitable relief permissible under [15 U.S.C.] § 78u(d)(5)." *Liu v. SEC*, 591 U.S. 71, 75 (2020). Disgorgement "need only be a reasonable approximation of profits causally connected to the violation." *SEC v. Ahmed*, 72 F.4th 379, 397 (2d Cir. 2023) (cleaned up). Once the Commission establishes this reasonable approximation, the burden

18

shifts to the defendant to prove a more reasonable figure. *See, e.g., SEC v. Lorin*, 76 F.3d 458, 462 (2d Cir. 1996).

To award disgorgement, a district court at the remedial phase of a Commission action must first find that investors suffered pecuniary harm. *SEC v. Govil*, 86 F.4th 89, 98 (2d Cir. 2023). However, "disgorgement is 'measured by' the wrongful gain obtained by the defendant rather than by the loss to the investor." *Id.* at 105.

### 2. The Investors Suffered Pecuniary Harm

The SEC has established the predicate of pecuniary harm required under *Govil* for disgorgement based on the Complaint's factual allegations, which should be taken as true. *See SEC v. iFresh, Inc.*, 22-cv-3200, 2024 WL 416709, at *3-5 (E.D.N.Y. Feb. 5, 2024) (pecuniary harm requirement satisfied based on the complaint's allegations of investor losses). The Complaint alleges that, because of the NanoBit scheme, 18 investors lost hundreds of thousands of dollars in combined crypto assets and fiat currency. DE 1, ¶ 2. Thus, the SEC has satisfied the predicate requirement of demonstrating pecuniary harm.

### 3. NanoBit Misappropriated Approximately $523,649

In support of its disgorgement request regarding Nanobit, the SEC submits the Bohmann Declaration, which documents that NanoBit misappropriated approximately $523,649 in crypto assets from likely investors. Bohmann Decl. ¶ 3. NanoBit received these crypto assets through the NanoBit Receiver Address and the 19 addresses created by the NanoBit Deployer Address. *Id.* ¶¶ 4-7. The crypto assets sent to the NanoBit Receiver Address and the 19 addresses created by the NanoBit Deployer Address were sent in small batches, which is consistent with payments by investors. *Id.* ¶¶ 4-8 and Exs. A-B. In contrast, the transfers from the NanoBit Receiver Address and the 19 addresses created by the NanoBit Deployer Address to the NanoBit Transmitter Address occurred in large amounts of aggregated funds, which is consistent with misappropriation. *Id.* ¶ 8.

19

Seeking $523,649 in disgorgement adheres to *Liu*'s holding that disgorgement consist of net profits, as NanoBit has offered no evidence that it had legitimate business expenses. *See SEC v. Fowler*, 6 F.4ᵗʰ 255, 267 (2d Cir. 2021) (defendant's burden to identify legitimate business expenses). Nor could NanoBit argue that it had legitimate business expenses, as it apparently operated as an entirely fraudulent enterprise. *See, e.g., Liu,* 591 U.S. at 84 ("when the entire profit of a business or undertaking" results from the wrongful activity . . . the defendant will not be allowed to diminish the show of profits by putting in unconscionable claims for personal services or other inequitable deductions") (cleaned up)*; SEC v. Collector's Coffee, Inc.*, 19-cv-4355, 2025 WL 752221, at * 11 (S.D.N.Y. March 10, 2025) (same); *SEC v. Genovesse*, 553 F. Supp.3d 24, 47 (S.D.N.Y. 2021) (same). Seeking $523,649 also adheres to *Liu*'s holding that disgorgement awarded under Exchange Act Section 21(d)(5)'s equitable relief provision be "awarded for victims." *Liu*, 591 U.S. at 75. If the SEC can collect the requested disgorgement, a distribution to harmed investors would be feasible.

### 4. Liu Misappropriated $60,603 and Zhao Misappropriated $4,500

In support of its disgorgement request regarding Liu and Zhao, the SEC submits the Hendelman Declaration, which documents that Liu and Zhao misappropriated $60,603 and $4,500, respectively, from investors. Hendelman Decl. ¶¶ 4, 14.

As to Liu, between December 21, 2023 and January 17, 2024, Radiant Horizons (the entity that Liu owned and controlled) received at least $99,000 from confirmed NanoBit investors. *Id.* ¶ 3. Between December 28, 2023 and February 5, 2024, Liu misappropriated $60,603.02, including withdrawing cash from ATMs and using a debit card to pay for travel, entertainment, dining, and other shopping. *Id.* ¶¶ 4, 11-12 and Exhibit A. The debit card spending did not include any legitimate business expenses under *Liu. Id.* ¶¶ 6-10. Indeed, like Nanobit, Radiant Horizons was apparently a completely fraudulent enterprise.

20

As to Zhao, between January 3, 2024 and January 4, 2024, Zhao Deli (the entity that Zhao owned and controlled) received at least $69,500 from confirmed NanoBit investors. *Id.* ¶ 13. Between January 3, 2024 and January 8, 2024, Zhao withdrew $4,500 in investor funds from ATMs. *Id.* ¶14 and Exhibit B. Zhao Deli was also apparently a completely fraudulent enterprise and had no legitimate business with deductible expenses.

### C.    The Court Should Order NanoBit, Liu, and Zhao to Pay Prejudgment Interest

In addition to disgorgement, the Court should require that Nanobit, Liu, and Zhao pay prejudgment interest on their disgorgement amounts. In securities cases, "[p]rejudgment interest may be awarded on sums ordered disgorged in order to fully compensate the wronged party for actual damages suffered." *SEC v. Laura*, 739 F. Supp.3d 6, 19 (E.D.N.Y. 2024) (*citing Frohling* 851 F.3d at 139). Requiring the payment of prejudgment interest prevents a defendant from receiving "what amounts to an interest free loan procured as a result of illegal activity." *SEC v. Premier Links, Inc.*, 14-cv-7375, 2022 WL 5422661, at *5 (E.D.N.Y. July 26, 2022) (citations omitted) (report and recommendation adopted 2022 WL 4118519 (E.D.N.Y. Sept. 9, 2022)). To calculate prejudgment interest, courts typically apply the IRS tax underpayment rate to the disgorgement amount. *See, e.g.*, *Ahmed*, 72 F.4th at 403-04 (affirming award of prejudgment interest to the SEC based on the applying IRS underpayment rate). Calculating prejudgment interest by applying the IRS underpayment rate to the SEC's requested disgorgement amounts for Nanobit, Liu, and Zhao starting from the date of NanoBit's incorporation (a starting point for the scheme) through the filing of this motion results in prejudgment interest of $81,957 for NanoBit, $9,485 for Liu, and $704 for Zhao. Hendelman Decl. ¶¶ 16-18 and Exhibits C-E.

### D.    The Court Should Order All Defendants to Pay Civil Monetary Penalties

Securities Act Section 20(d) [15 U.S.C. §77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)] authorize the Court to order civil monetary penalties. Civil penalties serve the

21

dual purpose of penalizing defendants for past violations and deterring them from future misconduct. *SEC v. Razmilovic*, 822 F. Supp. 2d 234, 280 (E.D.N.Y. 2011), *aff'd in relevant part and vacated in part on other grounds*, 738 F.3d 14 (2d Cir. 2013). "[B]ecause disgorgement represents merely a return of ill-gotten gains," courts recognize that "an additional monetary penalty is necessary to appropriately punish and deter . . . fraudulent activities." *SEC v. Forest Res. Mgmt. Corp.*, No. 09 Civ. 0903 (JSR), 2010 WL 2077202, at *2 (S.D.N.Y. May 18, 2010).

The amount of the penalty is to be determined "in light of the facts and circumstances," based on a three-tiered penalty scheme. 15 U.S.C. §§ 77t(d)(2) & 77u(d)(3)(B). The highest tier of penalties—the third tier—is appropriate for violations involving "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement," as long as the violation either "directly or indirectly resulted in substantial losses" or "created a significant risk of substantial losses to other persons." *Id.* Both Securities Act Section 20(d) and Exchange Act Section 21(d)(3) provide that the maximum civil penalties are the greater of: (i) the statutory maximum amount for each violation, or (ii) the gross amount of pecuniary gain to the defendant. 15 U.S.C. §§ 77t(d) and 77u(d). For conduct that occurred after November 3, 2015 (which includes all of the conduct in this case), the statutory maximum third-tier penalty amount for each violation is $236,451 for natural person defendants and $1,182,251 for other defendants.[5]

Factors that courts consider in determining whether penalties should be imposed and the amount of the penalty include: (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty

---

[5] *See* https://www.sec.gov/files/rules/other/2025/33-11350.pdf; https://www.sec.gov/enforce/civil-penalties-inflation-adjustments

should be reduced due to the defendant's demonstrated current and future financial condition. *SEC v. Fowler*, 6 F.4th 255, 266 (2d Cir. 2021).

These factors warrant a penalty equal to the one-time, third tier maximum for the corporate entities NanoBit, Radiant Horizons, Zhao Deli, and Sweet Karma. Together, they perpetrated a fraudulent scheme that resulted in substantial losses to NanoBit investors. Their conduct was egregious, involved a high degree of scienter, and was recurrent rather than isolated for the reasons set forth in Section IV.A above. Moreover, investors suffered substantial losses because of the conduct of NanoBit, Radiant Horizons, and Zhao Deli, DE 1, ¶¶ 41, 57, and Sweet Karma's conduct created a significant risk of the same loss (which was averted only because the victims' banks were able to reverse the transactions). Because Defendants have not appeared, there is no evidence before the Court regarding their financial conditions.

These factors also warrant a $50,000 penalty against each of Liu and Zhao. Their misappropriation of investors' funds to pay personal expenses resulted in substantial losses to those investors. Each of them knew or recklessly disregarded that they were spending investors' funds, as described in Section III.B. above. Their conduct was egregious, involved a high degree of scienter, and was recurrent. Under the third tier, the Court could impose a substantially higher penalty of $236,451 on each of Liu and Zhao. However, under the circumstances, the SEC believes that a penalty of $50,000 is appropriate.

## CONCLUSION

For these reasons, the SEC respectfully asks the Court to grant Plaintiff's Motion for Judgement by Default and enter an order (1) enjoining Defendants from future violations of the antifraud provisions of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder; (2) enjoining Defendants from participating in the purchase, offer, or sale of a security or inducing or attempting to induce the purchase or sale of a security by others

23

(with carveouts for personal trading by Liu and Zhao); (3) ordering disgorgement of **$523,649** against NanoBit, **$60,603** against Liu, and **$4,500** against Zhao pursuant to Exchange Act Sections 21(d)(5) and 21(d)(7); (4) ordering prejudgment interest of **$81,957** against NanoBit, **$9,485** against Liu, and **$704** against Zhao; and (5) ordering civil penalties of **$1,182,251** against NanoBit, Radiant Horizons, Zhao Deli, and Sweet Karma, and **$50,000** against Liu and Zhao pursuant to Securities Act Section 20(d) and Exchange Act Section 21(d)(3)

Dated:  New York, NY
        September 19, 2025

/s/ Todd D. Brody
Todd D. Brody
Jeremy Brandt (admitted *pro hac vice*)
Securities and Exchange Commission
New York Regional Office
100 Pearl Street, Suite 20-100
New York, NY 10006
(212) 336-0060 (Brody)
brodyt@sec.gov
